Joseph P. Tolins and Amelia R. Tolins v. Commissioner.
Tolins v. Commissioner
Docket No. 87846.
United States Tax Court
T.C. Memo 1963-34; 1963 Tax Ct. Memo LEXIS 310; 22 T.C.M. (CCH) 137; T.C.M. (RIA) 63034; February 6, 1963
*310 Taxpayer sold in 1955 an undivided 30 percent interest in improved real estate encumbered with a first mortgage He received 2 purchase money notes and third mortgages in part payment. In taxable year 1957 the owners obtained a bank's agreement to refinance and increase first mortgage; his third mortgages were not in default. Held: Taxpayer is not entitled to deduct depreciation under sec. 167, 1954 Code in respect of the notes, mortgages, or the property interest securing the mortgagor's indebtedness. Held, further, issues raised on brief and not pleaded are not before the Court and may not be considered or decided. Joseph P. Tolins, 14 Washington Pl., New York, N. Y., pro se. Ernest Honacker, Esq., for the respondent. HARRON Memorandum Opinion HARRON, Judge: The respondent determined an income tax deficiency of $1,929.89 for 1957. Petitioners filed their return with the district director of internal revenue for the lower Manhattan District, New York City. Joseph Tolins is referred to herein as the petitioner. In 1955, petitioner sold a 30 percent interest in improved real estate. Part of the purchase price was paid by notes secured by third mortgages. In his return for 1957 petitioner deducted $6,900 *312 as depreciation. Respondent disallowed the deduction. He determined that the notes and mortgages are not assets subject to depreciation, that petitioner is not entitled to take any depreciation on the depreciable property which is part of the security for the notes and mortgages, and that petitioner has not established any adjusted basis in the security for his mortgages for the purpose of depreciation. The questions presented by the petition are whether, under section 167 of the 1954 Code, petitioner is entitled to a deduction for depreciation of notes secured by purchase money mortgages, or for depreciation of the property interest which is security for the mortgages. All of the facts have been stipulated. The stipulations are incorporated herein by this reference. All of the stipulated facts are found as stipulated. For convenience and understanding of the questions, the stipulated facts are summarized as follows: The real estate involved is an apartment building and property located at 12-16 Washington Place, Manhattan Borough, New York City. Prior to February 1955, the property was owned by holders of undivided interests, namely, Sophie G. Beldner, 60 percent; Helen Carner, *313 10 percent; and petitioner, 30 percent. Benjamin Garfunkel held the interests of Beldner and Carner as their trustee. Petitioner held his interest for the production of income. Metropolitan Life Insurance Company held a first mortgage on the entire property in the amount of $545,580.46. Petitioner owed $31,750 on his interest which was secured by a mortgage, the second mortgage, which was held by Joseph Morgenstern, mortgagee. The first mortgage provided for quarter annual payments of $9,750, or $39,000 per year, from which there was to be deducted 5 1/2 percent interest per annum and the balance was to be applied in reduction of principal. The second mortgage provided for the payment of 6 percent interest per year until the date of maturity, September 1, 1957, when the principal sum of $31,750 was to be paid. In 1953 and 1954, petitioner received and reported in his returns net income from his property interest in the amounts of $9,571.40 and $11,608.09, respectively, which were arrived at after deducting depreciation on petitioer's property interest. He sold his interest, effective January 1, 1955; he received no income therefrom in 1955. On February 15, 1955, petitioner sold *314 his 30 percent property interest for $207,712.74 to Morgenstern and Fred Goldhirsch, who used a nominee, Tillie Feldman. The buyers requested 2 deeds to Feldman, each for an undivided 15 percent interest. The buyers paid $15,962.74 in cash; they (using their nominee) assumed petitioner's indebtedness on his 30 percent interest of $31,750 and the second mortgage securing the debt; and they had their nominee execute and deliver two purchase money mortgages, each for $80,000, or a total of $160,000. On the same date, Feldman conveyed both 15 percent interests to Goldhirsch and Jostern Realty Co., Inc., respectively. Each third mortgage provided for the payment of 4 1/2 percent interest per year to October 1, 1957, and beginning on that date for monthly payments of $425 to be applied first to interest and then to principal. The mortgages will become due on October 1, 1967, when the balance of principal is to be paid, which will be $60,000, each, or $120,000, if no prepayments are made during the period of the mortgages. The third mortgages provide that in the event a new first mortgage is placed on the property, the mortgagor of the third mortgages will pay petitioner $5,000 in reduction *315 of the principal of each one and petitioner will execute an agreement subordinating the mortgages to the new first mortgage. On December 31, 1957, Fred Goldhirsch became the owner of the 15 percent interest originally sold to Joseph Morgenstern and he then owned the entire 30 percent interest sold by petitioner in 1955. His ownership was the result of conveyances of that interest from Jostern Realty Co. to Morgenstern on October 1, 1957; from Morgenstern to David and Regina Goldhirsch on October 8, 1957; and from them to Fred Goldhirsch on December 31, 1957. The owners of the property arranged, prior to December 31, 1957, for refinancing of the first mortgage by Lincoln Savings Bank of Brooklyn, and for this purpose they used a nominee, Herman Roth, to whom they conveyed their interests on January 28, 1958. The steps taken, which resulted in a new first mortgage of $815,000, were as follows: Lincoln Savings paid Metropolitan Life $492,359.09, the balance due on its first mortgage, in consideration for assignment of the note and mortgage to Lincoln. Lincoln loaned Roth $322,640.91 secured by a note and mortgage. On February 5, 1958, Lincoln consolidated the 2 mortgages. There was *316 then outstanding an increased first mortgage of $815,000 due April 1, 1968, with 5 1/2 percent interest payable to July 1, 1958. Commencing on that date quarterly payments of $15,282.91, or $61,131.64 per year, were to be applied first to interest and then in reduction of principal. On February 5, 1958, Roth reconveyed to the real owners their respective undivided interests, 60 and 10 percent to Garfunkel, trustee for Beldner and Carner, and 30 percent to Fred Goldhirsch. On the same date, petitioner executed the required agreement subordinating his third mortgages to the first mortgage. The proceeds of the loan of $815,000 were distributed as follows: $492,359.09 to Metropolitan Life; $10,000 to petitioner in reduction of his third mortgages, $5,000 each; $312,140.91 to the trustee for Beldner and Carner, who retained $218,459.64 as trustee and paid Goldhirsch $93,681.27. The use of the respective nominees, Feldman and Roth, was in order that the real parties involved might avoid personal liability on notes or bonds and mortgages executed by the respective nominees. Petitioner's mortgagors paid him the required monthly payments on each mortgage of $425 on the first day of *317 October, November, and December 1957, which were applied first to interest and then to principal; the principal payments on each mortgage on the above dates were $125, $125.53, and $126.06, respectively, or a total of $376.59, thereby reducing the principal amount of each mortgage to $79,246.82 as of December 31, 1957, or $158,493.64, both mortgages. The payment of $5,000 on the principal of each mortgage received by petitioner on February 5, 1958, reduced the principal due on each one to $74,246.82, or a balance of both of $148,493.64. Petitioner's purchasers received net income in 1957 from the 30 percent property interest in the amount of $2,441.32. The bases for petitioner's claims in this case are the circumstances resulting from the increase in the first mortgage on the Washington Place property which was agreed to by the Lincoln Savings Bank of Brooklyn before December 31, 1957. Briefly stated, he contends that the increase of the first mortgage, with the accompanying increases in interest and annual payments on the new first mortgage, from $39,000 to $61,131.64, an increase of $22,131.64 per year in the charges against the income of the property, and other factors, must *318 necessarily have such an adverse effect on the value of the property, the only security for his third mortgages, and of the value of the third mortgages that there is almost a certainty that the third mortgage notes will not be paid in full on October 1, 1967, the maturity date. He also points out that the "interested parties," the trustee for Beldner and Carner, and Fred Goldhirsch, received, or "appropriated," $312,141.91 out of the proceeds of the new first mortgage loan leaving the building and property as the sole security for the new first mortgage loan and, in addition, "saddled the income of the building with an annual interest charge on the amount which they withdrew, which, at the end of ten years will total $171,767.50." Under all of the circumstances petitioner claims that as the holder of the purchase money third mortgages he is entitled to a deduction, under section 167, for annual depreciation either of the notes secured by the third mortgages, or of the 30 percent property interest which is security for the mortgages. He computed and deducted in his return depreciation of $6,900. On brief, he makes claim for an increased deduction of $9,166.67. In the alternative, *319 petitioner claims that he is entitled to a deduction in 1957 either for a partially worthless debt under section 166(a), or for a reserve for bad debts under section 166(c). The alternative contentions are disposed of first. Unfortunately, petitioner did not file any amendment to his petition making new claims for a deduction for a partially worthless debt, or a reserve for bad debts. Only by the making of appropriate pleadings can an issue be presented for decision. It is a well and long established rule of this Court that issues raised for the first time on brief, without the appropriate pleadings, are not properly before the Court and will not be considered or decided. This rule must be followed here as it is in other cases. Therefore, it is held that the alternative claims under section 166 raised for the first time by the petitioner on brief will not be considered or decided. ; ; ; . Accordingly, the questions to be decided are only those raised by the pleadings, namely, petitioner's claims *320 for a deduction for depreciation. Petitioner in 1955 made a bona fide and valid sale of his 30 percent interest in the property. It was a completed transaction and petitioner has never instituted any proceeding claiming that it was fraudulent. Upon consummation of the sale, petitioner no longer used or was entitled to use the property and he was not entitled to receive and did not receive any of the earnings of the property. He agreed to accept in part payment of the consideration 2 purchase money mortgage notes and third mortgages which will become due on October 1, 1967. Through the payment of the notes he will receive back his capital investment in the property plus whatever additional amount was provided by the contract of sale. If and when the mortgagor defaults in the mortgage payments, petitioner will be obliged to attempt to realize upon the security. But as of the end of the taxable year 1957, the purchaser-mortgagor was not in default. It is well settled that a prerequisite for a depreciation deduction from taxable income under section 167(a) is the holding of a depreciable interest. Before the sale, petitioner had an investment in the property which was depreciable and *321 he took and was allowed depreciation deductions. After the sale, he no longer had a depreciable investment in the property. Cf. (C.A. 3, 1948), certiorari denied . The 2 purchase money mortgages, security for the mortgage debt, do not entitle petitioner as mortgagee to an allowance for any depreciation of the property which represents such security. The purchaser-mortgagor bears the burden of depreciation - the wear and tear - of the property which is sustained during the period of his indebtedness. When he will have paid his debt in full, the property will have suffered depreciation. Thus, the purchaser-mortgagor holds the depreciable interest. , cited by petitioner, is not helpful. There the individual who in reality was a mortgagor was allowed the depreciation deductions. See, also, , affirmed without discussion of this point (C.A. 9, 1956), certiorari denied , where the mortgagor was held entitled to the depreciation deduction. Petitioner as a *322 mortgagee does not have a capital investment, i.e., depreciable interest, in a 30 percent interest in the property; his interest in the property after the sale and as a mortgagee is only an interest securing the purchaser's indebtedness. The condition in section 167(a) which applies to the situation here is that the property for which depreciation is claimed must be held for the production of income. Petitioner's interest as a mortgagee in the Washington Place property is only a security interest with respect to the mortgage indebtedness, not a property interest held for the production of income. Petitioner's reliance on , reversed on another issue, (C.A. 6, 1943), certiorari denied is misplaced. It is unrelated on its facts to this case; the holding does not give support to petitioner's claim; there the taxpayer was not allowed a depreciation deduction. Petitioner seeks to obtain here the same conclusion as has been made in certain cases to the effect that even though a person is not the owner of depreciable property, he is nevertheless entitled to a depreciation deduction. *323 It is in this respect that he relies upon the Lazarus case, supra, and a statement in the Barbour case. The following was stated in the latter case (p. 1121): While ownership may not be a prerequisite to the right to a depreciation deduction, see , it is conversely true that not even ownership necessarily entitles the owner to deduct depreciation. The test is whether the claimant to depreciation is in such a position as to suffer an economic loss as a result of the decrease in value of the property due to the depreciation. ; ; affd. (C.C.A., 4TH Cir.), ; certiorari denied, . The above statement represents only a judicial recapitulation of the conclusions reached in certain cases where it was concluded that the taxpayer had established that he held a depreciable interest in property in substance, reality, and fact. See, for example, the discussion in 4 Mertens, Law of Federal Income Taxation, par, 23.06, where , and other *324 authorities are discussed. In each case, the taxpayer has the burden of establishing that he holds a depreciable interest in property within the provisions of the statute allowing deduction of depreciation. As stated above, we are of the view that petitioner has failed to establish that he held a depreciable interest in the Washington Place property in the taxable year; he has been unable to bring his case within the reasoning of the Lazarus case. The chief argument of petitioner is that the increase of the first mortgage to $815,000, after he sold his 30 percent interest, and the related and subsequent actions of the owners of the Washington Place property served to decrease and impair the value of the security for the mortgage indebtedness owing to him. It is this alleged decrease in the value of the security for the indebtedness which is the real basis for petitioner's claim for a depreciation deduction. On brief, petitioner resorted to a statement of new facts relating to expected annual depreciation of the building and fixtures and purported increases in costs of repairs and replacements which, petitioner argues, when considered with the increases in the carrying charges of *325 the increased first mortgage will render the security for the mortgage notes of little value and the balance due at maturity on the mortgage notes uncollectible. That is to say, petitioner argues that when the Lincoln Savings Bank agreed in December 1957 to refinance and increase the first mortgage to $815,000, his security for the purchase money notes became so greatly impaired that he should be allowed depreciation deductions beginning in 1957. It is evident that petitioner is fearful that there will be defaults in the payment of the purchase money notes. Such eventuality, as of December 31, 1957, may have been pessimistic. The alleged facts stated for the first time on brief and not stipulated have not been presented under the required proof and we may not resort to a type of judicial notice by making inferences relating to the possible increases in the costs of maintaining the property and depreciation thereof and the effects of increasing the first mortgage. Nevertheless, assuming arguendo, but not finding, such alleged factual inferences to be probable, they do not help petitioner. A taxpayer having a capital investment in property, a depreciable interest, may not take a depreciation *326 deduction for an amount alleged to represent a decrease or shrinkage in the market value of property. ; ; , affirmed (C.A. 2, 1928), certiorari denied ; , affirmed (C.A. 5, 1945), certiorari denied . Petitioner, having only a security interest in the property and not a capital investment, is not entitled to more favorable treatment than one having a depreciable interest. His argument is without merit as well as unsupported by proof of alleged facts set forth on brief for the first time. Another argument of petitioner is that as holder of purchase money third mortgages he is, under section 254 of the Real Property Law of New York vested with title in the mortgaged property which title does not terminate until the full payment of the mortgage indebtedness. This argument is erroneous. In the first place, the issue arises under a Federal statute and must be decided under that *327 statute. However, section 320 of the Real Property Law of New York (49 McKinney Laws Sec. 320) not cited by petitioner, provides that a deed conveying real property which appears to be intended only as a security in the nature of a mortgage must be considered a mortgage. . That provision of New York law is relevant, not section 254 of the Real Property Law of New York. The evidence establishes that petitioner is solely a mortgagee with respect to a 30 percent interest in the Washington Place property. Under New York law "a mortgage is merely an interest by way of security for a debt, and a mortgagee has no title, but only a lien upon the land." , affirmed on this point ; . Petitioner's argument on this point is of no avail. Petitioner also claims that he is entitled to a deduction for depreciation of the 2 purchase money mortgages or the notes. This argument must fail. The notes are evidence of the indebtedness of the mortgager to petitioner, the mortgagee, as *328 a result of the sale of petitioner's property interest. Neither the notes nor the mortgages represent an investment in a capital asset for which the statute allows a depreciation deduction. Cf. , affirming a Tax Court Memorandum Opinion; . Moreover, there was no wear, tear, and exhaustion of the notes in 1957 as they were not in default. Petitioner is not entitled to a depreciation deduction under section 167(f). Petitioner does not have any cost basis in the interest, which is security for the mortgage debts. A cost basis must exist before a depreciation deduction may be claimed. Section 1.167(a)-1(a), . Respondent's disallowance of the depreciation deduction is sustained. Decision will be entered for the respondent.